## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| NATASHA MEREDITH,                )<br>                                                          )<br>             Plaintiff,              )<br>       v.                                              )<br>                                                          )<br>BAYER CROP SCIENCE, LLC, et al.,  )<br>                                                          )<br>             Defendants.           ) | Case No. 4:23-cv-01012-SEP |

### MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Compel Arbitration.  Doc. [20].  For the reasons set forth below, the motion is granted.

### FACTS AND BACKGROUND

In October 2015, Plaintiff Natasha Meredith—an African American woman—began working as an entry-level chemist at Defendant Bayer Crop Science.  *See* Doc. [6] ¶¶ 1, 10.  Although she works at Bayer, Plaintiff was hired by Defendant Rose International, a staffing company that "collects resumes from interested individuals, recruits potential employees, and works in collaboration with various private and public companies to fill positions as needed for its clients, including Bayer."  Doc. [20] at 1-2; *see also* Doc. [6] ¶ 9.  Plaintiff entered into an employment contract, including the Employment Terms Agreement (ETA), with Rose, and was soon after assigned to work at Bayer.  *See* Docs. [20-1], [20-2].

Despite "perform[ing] well throughout her employment" and "achieving a number of successes," Plaintiff's experience at Bayer has been challenging and painful, personally and professionally.  Doc. [6] ¶ 11.  Plaintiff alleges that throughout her time at Bayer, she has been "subjected to race and gender discrimination and hostile work environment based on her race and gender."  *Id*. ¶ 12.  After almost seven years of such discrimination, Plaintiff brought this nine-count suit for a hostile work environment, discrimination, and retaliation based on race and gender under the Missouri Human Rights Act (MHRA) and Title VII of the Civil Rights Act of 1964.  *Id*. ¶¶ 39-94 (Counts I-V).  In the alternative, Plaintiff brings claims for negligence, tortious interference with a business expectancy, negligent infliction of emotional distress, and intentional infliction of emotional distress.  *Id*. ¶¶ 95-128 (Counts VI-IX).  Defendants now move to compel arbitration based on Plaintiff's employment contract with Rose.  *See* Doc. [20].

**LEGAL STANDARD**

"Arbitration agreements are governed by the Federal Arbitration Act ('FAA')." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). The FAA mandates broad enforcement of arbitration provisions:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.* But a "matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)). "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] . . . a party who has not agreed to arbitrate a dispute cannot be forced to do so.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

Before compelling arbitration, a district court must determine: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). Because "arbitration is simply a matter of contract," state-law contract principles govern the validity of an arbitration agreement. "If a valid and enforceable arbitration agreement exists under state-law contract principles, any

2

dispute that falls within the scope of that agreement must be submitted to arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citing *Faber*, 367 F.3d at 1052).

A motion to compel arbitration should be "analyzed under a standard akin to [a motion for] summary judgment." *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014). Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in her favor. *Id.* at 743. The Court may not compel arbitration where any genuine issue of material fact remains as to whether a valid arbitration agreement exists. *Id.*

## DISCUSSION

The employment agreement between Meredith and Rose contains a valid arbitration agreement, and the parties' dispute falls within its terms. Plaintiff's arguments that the arbitration clause is unenforceable all miss the mark.

### I.  **Plaintiff's claims are covered by a valid arbitration clause.**

The ETA requires the parties to resolve "any and all disputes, claims, or controversies"—unless "prohibited by applicable law or related to claims for workers' compensation benefits"—"arising between employee and company . . . with respect to this agreement or the parties' employment relationship or the termination thereof." Doc. [20-1] ¶ 13. Plaintiff acknowledges that the arbitration agreement is in the contract, Doc. [23] at 6, but she argues that the agreement is unenforceable for several reasons.

#### A.  **The arbitration agreement is mutually binding.**

Plaintiff first argues that the arbitration agreement in unenforceable because it is a one-way street; Plaintiff is bound to arbitrate disputes, but Rose can seek relief in court. *See* Doc. [23] at 4. Missouri law considers "'mutuality of obligation,' as essential to the formation a valid contract." *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 686 (Mo. Ct. App. 2015). "Mutuality of obligation 'means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound.'" *Id.* (quoting *Sumners v. Serv. Vending Co., Inc.*, 102 S.W.3d 37, 41 (Mo. Ct. App. 2003)). Plaintiff argues that the ETA carves out exceptions that allow Rose to avoid arbitration and make Rose's promise "illusory." Doc. [23] at 7. Plaintiff points to paragraph 12 of the ETA, arguing that it "references Rose's ability to 'seek relief in any court or other tribunal' if the employee is in violation of any Restriction contained in the agreement." *Id.* at 6. She argues that

"Rose created an exemption for itself allowing itself to seek redress from the courts for claims it would have against Plaintiff and therefore there was no mutuality of obligation." *Id*. at 7.

A broader look belies Plaintiff's account of paragraph 12:

*If Rose International shall be required to seek relief in any court or other tribunal*, then the Restrictions shall be extended for a period of time equal to the pendency of such proceedings, including appeals, and excluding any periods during which the court or other tribunal has ordered Employee to honor the Restrictions and he has complied with such order.

Doc. [20-1] ¶ 12 (emphasis added).  Rose's ability to "seek relief in any court or other tribunal" is contingent.  The ETA does not exempt Rose from submitting its claims to arbitration; it simply provides that *if Rose is required to seek relief in a court or other tribunal*—there are circumstances under which the arbitration clause does not apply, e.g., when "prohibited by applicable law," and to "claims for workers' compensation benefits"—the ETA's restrictions remain in effect.

Plaintiff also quotes a selection of paragraph 12 that states "in addition to all remedies available to Rose International in the event of a breach by Employee of the Restrictions, Employee agrees to submit to any interim restraints and permanent injunctive relief for the enforcement thereof." Doc. [23] at 6.  That provision does not make Rose's promise to arbitrate illusory.  As Defendants explain in their Reply, that "passage does not reserve a right to bring claims against Plaintiff outside of arbitration.  Instead, it only states that 'in the event' a breach is found, that Plaintiff will submit to 'any interim restraint and permanent injunctive relief' (i.e. restraints imposed by an arbitrator) because monetary damages are insufficient." Doc. [27] at 11.

The ETA is thus unlike the contracts in *Jimenez v. Cintas Corp.*, 475 S.W.3d 679 (Mo. Ct. App. 2015), and *Caldwell v. UniFirst Corp.*, 620 S.W.3d 236 (Mo. Ct. App. 2020).  In *Jimenez*, an employment contract gave Cintas the right to "apply to any court of competent jurisdiction" to enforce Ms. Jimenez's compliance with "Section 4" of the contract, which prohibited her from "disclosing confidential material and information belonging to Cintas, competing against Cintas, and soliciting Cintas's customers and employees." 475 S.W.3d at 682. The court found no mutuality of obligation because "Cintas alone is exempted from arbitrating disputes concerning Section 4's Non-Compete Provisions, while Jimenez is bound to arbitrate those same claims," and the "exception allows Cintas to refrain from arbitrating those claims it is

4

most likely to bring against Jimenez," while "Jimenez is bound to arbitrate all of those claims legally arbitrable." *Id*. at 687-88.  Similarly, in *Caldwell*, the contract "reserved for [the employer] the right to seek injunctive relief in court against [the employee] on certain claims, thereby sidestepping the arbitration process, while [the employee] remained bound to arbitrate any claims he was likely to have."  620 S.W.3d at 243.

Unlike *Jimenez* and *Caldwell*, the ETA's arbitration requirements are not one-sided.  That is especially true because a "contract's terms 'are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning'" and "each term of a contract is construed to avoid rendering other terms meaningless."  *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 280 (Mo. 2019) (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (en banc)).  Plaintiff's interpretation of paragraph 12 would render meaningless paragraph 13's requirement that the parties resolve "any and all disputes, claims, or controversies . . . with respect to this agreement or the parties' employment relationship or the termination thereof" by "binding arbitration."  Doc. [20-1] ¶ 13. Nor is Plaintiff's obligation to "submit to any interim restraints and permanent injunctive relief for the enforcement" of the ETA's restrictions incompatible with the ETA's arbitration agreement, because paragraph 13 provides that the "arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction."  *Id*. ¶¶ 12-13.  In sum, there is no lack of mutual obligation to render the arbitration agreement unenforceable.

**B.  The ETA does not give Rose the ability to unilaterally amend the contract.**

Plaintiff next argues that the ETA is unenforceable because it gives Rose the ability to unilaterally amend the arbitration agreement.  *See* Doc. [23] at 7-8.  That argument mischaracterizes the ETA.  While paragraph 5 of the ETA gives Rose the ability to unilaterally modify the employee handbook, it states that the ETA itself can only be altered "by a written agreement signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought."  Doc. [20-1] ¶ 16.  A reference to Rose's ability to change the employee handbook does not somehow apply that power to the arbitration agreement.

**C.  The electronic signature on the New Hire Form is sufficient.**

Plaintiff's third argument is that Defendants have not shown that she signed and accepted the contract.  Doc. [23] at 8.  Plaintiff does not deny that she electronically signed the new hire

5

form, but she denies that Defendants have shown "that Plaintiff is the person that assigned the purported electronic signature to the New Hire Form." Doc. [23] at 8. Missouri has adopted the Uniform Electronic Transactions Act (UETA), which provides that the "effect of an electronic record or electronic signature attributed to a person under subsection 1 of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement . . . ." Mo. Rev. Stat. § 432.240.2. Plaintiff's personal details including her date of birth, address, Social Security Number, and emergency contact information are all included on the same New Hire Form. *See* Doc. [20-2]. Rose attached a declaration to its Reply explaining the onboarding process and showing how Plaintiff's electronic signature would have been affixed to the New Hire Form. *See* Doc. [27-1]. That is sufficient to attribute the electronic signature on the New Hire Form to Plaintiff. Absent any evidence that the signature is invalid, the authenticity of the signature is not seriously in dispute.

      **D. Counts VI through IX are within the scope of the arbitration agreement.**

Plaintiff argues that even if the arbitration agreement is valid, her tort claims in Counts VI through IX are not covered because they are pled "in the alternative presuming one, if not both of the defendants argue Plaintiff was not its employee." Doc. [23] at 9. She explains that "[b]y the very nature of denying an employment relationship, there can be no claim 'with respect to . . . the Parties' employment relationship, or the termination thereof.'" *Id*. Plaintiff cites no law to support that argument, and her speculation about what Defendants may argue in the future cannot help her avoid arbitration on claims that fall within the scope of the arbitration agreement. The scope of the arbitration agreement includes all claims "arising between employee and company" with respect to the ETA or "the parties' employment relationship." Doc. [20-1] ¶ 13. Counts VI through IX cover the same conduct as Counts I through V and clearly relate to her employment relationship with Rose and work at Bayer. Accordingly, all of Plaintiff's claims are subject to the ETA's arbitration agreement.

**II.**    <u>**Plaintiff must arbitrate her claims against Defendant Bayer**</u>**.**

Plaintiff also argues that Bayer cannot enforce the arbitration agreement because it "did not sign the employment terms agreement" and "is not mentioned in the employment terms agreement." Doc. [23] at 9. Defendants respond that Plaintiff should be estopped from avoiding arbitration with Bayer because the "Petition does not distinguish between Defendants Rose and

6

Bayer, and all nine of her claims are against them both." Doc. [20] at 8. Missouri law resolves the dispute in Defendants' favor.

In *State ex rel. Hewitt v. Kerr*, Hewitt, a long-time employee of the St. Louis Rams sued in state court for age discrimination after the Rams decided not to renew his employment contract. 461 S.W.3d 798, 803-04 (Mo. 2015) (en banc). Hewitt's employment contract included a binding arbitration clause covering "any dispute" between Hewitt and the Rams. *Id*. at 804. That contract was signed by an entity called "St. Louis Rams Partnership," but Hewitt sued three other non-signatories, "ITB Football Company, L.L.C., the Rams Football Company, Inc., and the St. Louis Rams, L.L.C." *Id*. at 814. When the Rams moved to compel arbitration, Hewitt argued that the non-signatories could not enforce the arbitration agreement. The Missouri Supreme Court rejected that argument because Hewitt's petition made "no differentiation between the signatory and non-signatory defendants." *Id*. at 815. The court explained that if the non-signatories "were not bound by the contract, including the agreement to arbitrate, then Mr. Hewitt has failed to state any basis on which these non-signatory defendants employed him or could be liable for his firing." *Id*. Hewitt could not "treat these defendants severally for arbitration purposes but jointly for all other purposes." *Id*.

That principle applies to Plaintiff's claims. All of Plaintiff's claims are brought against Rose and Bayer. And in each Count, Plaintiff refers to "Defendants" as a "single unit." *Kerr*, 461 S.W.3d at 814; *see also* Doc. [6] ¶¶ 44, 53, 67, 81, 94, 97-99, 113, 117-19, 124-25. She also asks the Court to find Defendants "jointly and severally" liable on each Count. *See* Doc. [6] ¶¶ 47, 56, 71, 85, 94, 102, 114, 122, 128. Plaintiff makes some allegations against Rose and Bayer individually, but the overall claims are so unified that allowing Plaintiff to avoid arbitration against Bayer would lead to "[e]visceration of the underlying arbitration agreement." *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005).

Plaintiff argues that "*Kerr* is distinguishable from this case as the Plaintiff in that case argued he was fired in violation of his employment contract due to age discrimination," that is, *Kerr* was a breach of contract case. Doc. [23] at 10-11. That is wrong. The underlying claim in *Kerr* was "age discrimination in violation of the Missouri Human Rights Act," not a breach of the employment contract. 461 S.W.3d at 804. Plaintiff also cites *Netco, Inc. v. Dunn*, 194 S.W.3d 353 (Mo. 2006) (en banc), for the proposition that "the estoppel theory is most often applied in cases where a plaintiff alleges that a defendant is liable under the terms of a contract,

7

even though the defendant was a non-signatory to the contract." Doc. [23] at 7. But that principle from *Netco* is not inconsistent with the Missouri Supreme Court's more recent decision in *Kerr*. And under *Kerr*, Plaintiff cannot avoid arbitration because she "treated signatory and non-signatory defendants as a 'single unit.'" *Kerr*, 461 S.W.3d at 814 (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)); *see also Morgan v. Ferrellgas, Inc.*, 8 F.4th 795, 800 (8th Cir. 2021) ("As in *Hewitt*, each of Morgan's tort claims against the defendants 'is a single one that should be referred in its entirety to arbitration.'") (quoting *Kerr*, 461 S.W.3d at 815).

*Curns v. Akins* does not help Plaintiff either. 669 S.W.3d 672 (Mo. Ct. App. 2023). In *Curns*, the plaintiff was employed by a staffing agency to work at a hospital, and her employment contract with the staffing agency included an arbitration clause. *Id*. at 674. After she was fired, the plaintiff sued the hospital for employment discrimination and an employee of the hospital—Akins—for assault. *Id*. at 675. The Missouri Court of Appeals held that the hospital could compel arbitration because it was a third-party beneficiary of the employment contract with the staffing agency. *Id*. at 677. Akins, on the other hand, could not compel arbitration because the plaintiff's discrimination claim against the hospital and assault claim against Akins were "distinct." *Id*. at 678. Not so in this case. Plaintiff brought each count against Rose and Bayer together, and there is no basis for separating the claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration, Doc. [20], is **GRANTED**, and the case is **STAYED** pending arbitration.

**IT IS FURTHER ORDERED** that the parties must provide a joint update on progress of arbitration no later than **November 4, 2024**, and a notice updating the Court no later than 10 days following the conclusion of arbitration proceedings.

Dated this 3rd day of September, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

8